Good morning, Your Honors. I'm David Eisenberg. I represent the appellant, Jefferson Gatewood. I would like four minutes for rebuttal. Thank you, Your Honor. The issue, as I see it, Your Honors, in this case, is when does a lot become too much? In this case, it has to do with prior similar acts or 404B or 413 evidence. And the second decision, or second issue, is how does a district court judge decide when a lot becomes too much? I'm going to start with the second issue first, and that is the procedures that were followed by the district court here. Procedures that were followed were really pre-trial and not waiting until the evidence had been presented. In other words, the district court judge made a decision in Document 332 on a pre-trial basis that he was going to admit the similar-act evidence. In our view, that was peremptory, it was premature, for one thing, and for a second reason is, in his analysis, which I'll get to in a moment, he really didn't have a chance and an opportunity to flush out those five factors that are important to this analysis. That pre-trial consisted of proppers by counsel, as it often does. There were no witnesses offered. Pre-trial lasted in, with respect to this particular matter, possibly an hour, maybe two hours. So let me start with that factor first. That is to say, how did the procedure in this case become faulty? Anderson-Croft, Jr.: It would be more helpful, at least to me, if you talked about whether it's actually an error substantively than the procedure, because unless there really is a problem here with what the evidence was that was admitted, I'm less concerned about when the court made the decision and more concerned about what the actual decision was to admit this evidence. Ginsburg, Jr.: Respectfully, Your Honor, the reason why I do think the procedure is important is because the court allowed, on a witness-by-witness basis during the trial, to have similar act evidence brought in. There was no opportunity at that time for us to be able to winnow out what was not either probative or more likely what we felt was too highly prejudicial to our client. And that is why I say the procedure should have been followed in the first place. I think Your Honor wants to know about the five factors. You consider those more important. I just look at the cases, and I will get to that, Your Honor. I don't mean to put you off. I just look at the cases like LeMay, which is our Ninth Circuit case that is probably the principal case in this area. In LeMay, the court there said it was going to reserve its ruling until trial so that it could get a full evaluation of all the evidence and then determine what the appropriate balancing test would be to be applied. And the court said that is best left for trial. And there were two reasons why the district court in this case did this peremptorily. One is, basic reason, the United States Attorney's Office said, Judge, we don't know how many of our witnesses are going to show up, so we would like to have a ruling now. This was at pretrial. And the district court judge was sympathetic to that for one reason. If one practices in Arizona, the distance from the reservation to the courthouse in Prescott is a long ways. However, I don't find that as a factor at all in any of the cases I read. That is to say, it's going to be too hard for us to produce these witnesses. We don't know who is going to show up. More importantly, as far as we were concerned, wait. Call your witnesses. Have them there. You have the subpoena power. You have the government's ability to ferry people back and forth. Wait until the trial starts, and let's do this not right during the trial, but perhaps on a pretrial basis. And then the court could make the decision as to whether of the witnesses should have testified out of the presence of the jury first, and then the court would make the evaluation, and then they testify again. Is that what you're saying, Sheriff? Absolutely, Your Honor, and that does happen quite often in cases where you seek suppression because of witness issues. And so if that had happened, what should the court have decided about who should have been admitted? Well, it's hard to say in that context. Actually, Your Honor, I may have misspoke. The better way to have done this is bring in all your Jane Does, the charged people. Let's hear from them. There were nine testifying to 23 events. After that happens, then I, as the district court judge, could have the following two issues to resolve. First, were those witnesses incredible such that the propensity evidence of uncharged witnesses should come in? And secondly, during the cross-examination, did the defense present any defenses that would say to me as the umpire, aha, those other uncharged witnesses, they will answer to those defenses. Government, yes, you can bring those people in. So what should have happened is, not at the close of the government's case, but after it called all of its charged witnesses, now we're going to bring in the uncharged witnesses. And the reason why that's important is, in this case, I was there. I have to say the credibility of some of these young ladies was high. Did you bring a motion before the district court to handle it this way? Yes. I think that was in our motion. In the Senate. You think your whole case depends upon it. Yes. Was it called to your attention? I mean, I was a trial judge. We did a lot of things to eliminate. Sometimes we didn't. There's broad discretion that's given to trial judges to how to handle a case. If you don't raise it, we don't even know why the district court was doing what the district court did. I don't see how you can even raise it to us now, unless you can show us where it was raised before the district judge by way of motion. I'm not sure it was implicit in the motion, but it was discussed at the pretrial hearing, Your Honor. Well, you know, a lot of things are discussed at pretrial hearings, but did you bring a motion for in limine hearings? Yes, we did bring a motion to preclude the admission of this, I'll call it 404B evidence, it's really 413 evidence, yes. We didn't, we did bring such a motion, Your Honor, as we brought it to you. Preclude, but that's different from hearing it and making a decision. Well, we brought it before the district court judge. Yeah. And isn't that, where is the error of the district court judge? I mean, there has to be something. Do you say he committed error by denying your motion? He, well, yes, Your Honor. More importantly for this point, he committed error by denying it during the pretrial. His written order, that's document 332, you will see at the end it says, government of the defendant's motion is denied. And that was really the end of the issue. Now, it's not, I don't mean to be disrespectful to any judge, and I wasn't, I don't mean that, Your Honor, and I don't mean it directly to you at all. But having read that order between pretrial and the time for trial, I did not think it appropriate to revisit that. During trial, I did not think it appropriate to revisit it at all either, because by that time it was very clear to me that the judge had denied our relief. I'm saying that the better approach to this would have been if the court had waited. And I am not saying that the judge, you're not attacking what the judge did. You're attacking that he didn't change and do something else. I'm attacking. I want to know where the error is. The error is he made his order pretrial. He did not wait. So I'm attacking that. I'm also attacking the substance of the order. Okay. And the reason why it's reversible error that he didn't wait is because? Because it denied us proper appropriate procedure under the rule. Moreover, it really denied us due process. Explain why it denied you due process, or explain what evidence came in that shouldn't have come in. Then I'll go to the factors, Your Honor. All right. In effect, the way to look at this due process claim is to determine whether whatever came in allowed propensity, I have to say this the right way, to so overwhelm the jury that it isn't going to make a decision on a count-by-count basis. It's prejudice, not propensity, right? The question here is whether there was too much evidence that was prejudicial that wasn't needed because they'd already established propensity. Isn't that right? That's correct, Your Honor. And what happens is, as a practical matter, the jury conflates the uncharged evidence with the charged evidence. And this jury was out about five hours for 23 counts. Now, that may reflect a poor job done by defense counsel. It may also reflect the fact that there's no need to really have to sit down and vote on a count-by-count basis. Obviously, I don't know what happened inside the jury room. And I'll proceed to Your Honor's points about the five factors. It's the fifth one that I find most concerning. Which is? The last one, about whether prejudice outweighs probativeness. I think those are the five factors you're talking about, or are you talking about different factors? I well is, I guess I'd interpret that as being necessity, whether you really needed to have this type of information come in. So let's take a look at the charge conduct. There were 23 charges, nine witnesses. Of those nine witnesses, almost all at the time were juveniles. Now, why does that really make why is that important? It's important because a lot of them testified about things that happened when they were three or, I'm sorry, six, seven, eight, nine years old. If you could imagine the sympathy that a child like that, coming before a large courtroom like this, the dynamics of that are such that this child has built-in credibility. Now, some of them were cross-examined and perhaps effectively sold, but they were the older ones. In the context of a district court judge's life, sitting there and watching little children cry in the witness stand, would tell me that perhaps this has come to the point where for charge conduct, the prejudice is going to be overwhelming, so overwhelming, if I allow uncharged conduct to come in, that I'd better perhaps put a, put a damper on the uncharged conduct. There were also there were also the uncharged conducts that have come in, and I think I think, Your Honor, that given this case, it was totally unnecessary, and because no, well, I've already gone down that road. Let's talk again about the charged conduct and the witnesses. Not every witness stuck to sexually aggressive acts. Some of them talked about being hit, some of them talked about being taken out in the woods and left to come back home. Some of them talked about the disappointing situation where the mother lived in the same house as Mr. Gatewood. Mr. Gatewood saying to the child, if you tell, you're out, so is your mother. Were objections raised at the time they got off the reservation? Well, that's an unfortunate term. Yes. Got off the tact of what they're supposed to be charged and got into the other part. There was, Your Honor, at the beginning, but I think the decision was made, and I think by trial counsel, that we weren't really conveying the right impression to the jury. Ordinarily, the lawyer asks for a continuing objection, which is always granted by the district court to save you that embarrassment. Was that done? No. It wasn't, Your Honor, and the reason it wasn't done that way was because I think every one of these children were different. I mean, their situations were different. At the beginning, we did object. The answer to your question, Your Honor, is no, we did not ask for it. Do you want to save any of your rebuttal time? I know we've been asking you questions, but you've mentioned the desire to save some time. Yes, Your Honor, I did. Why don't you do that, and then, if appropriate, if my colleagues have additional questions, we'll extend the time. But for now, why don't you take a seat, and we'll hear from the government, and then you can come back and call it again. Thank you, Your Honor. May it please the court, my name is Karla Hodes-Delore, I'm representing the government. The defendant here, as you know, is a long-time serial sex offender whose crimes span 28 years, and the serial nature of his conduct and the multitude of his victims didn't come to light until 2010 after the report of Jane Doe 1's sexual assault by the defendant. Now, the defendant's sexual assault of his first three victims were too old to be charged by the statute of limitations, and his assaults against the other victims were discovered, against some of the other victims, were discovered too close to trial that they were charged in a separate indictment. The district court allowed in these evidence of these other assaults under Rule 413 and Rule 414, and the district court did not abuse its discretion in allowing in this other uncharged Rule 413 and 414 evidence, because it was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. The real question, I suppose, he's raising is whether it should have been left out under 403. That is correct. He's — and it should not have. The court did not abuse its discretion in finding that the probative value was not substantially outweighed by the danger of unfair prejudice. And the reason why this evidence was so probative and so pertinent is that it was needed for various reasons. One, it corroborated the testimony of the charged victims in this case. But, counsel, in this case, there were so many charged instances. I forget what the total number is, but it was a lot. All of the things that one might normally look at on letting uncharged testimony in seems to be fulfilled. You've got similarity, closeness in time, frequency, intervening circumstances, and necessity. Wasn't that all fulfilled without introducing any non-charged conduct? Well, Your Honor, there is a possibility that that could have been filled. But the reason — the government needed to prove all of the elements of the case. And the reason this other act evidence was needed is because in some instances the government was required to prove specific intent or force in some of the charged conduct. And these other act witnesses helped to — helped the government fulfill its charge because the jury, as they can determine the credibility of these witnesses, and in this instance, in this case, the jury could have decided not to have believed the government's witnesses for the charged acts for a number of reasons. The — as the defendant pointed out in its opening statement, there was no DNA or forensic evidence. The charged victims, a lot of them were runaways or they were intoxicated at the time of their assaults, or they reported their assaults many years later. Many of the victims, the charged victims at the end, were related. They were sisters, cousins. And as the defense pointed out in its closing argument, the — these charged witnesses were in collusion with one another to make up these allegations against the defendant. So what was important is you needed these other act witnesses who had no relationship to these charged witnesses and who didn't even know them. They were also subjected to assault. And their assaults that they were subjected to were remarkably similar to what the assaults the charged victims were subjected to. And another reason why you needed this other act, this — not other act, but this Rule 413, 414 evidence to come in is because if you look at these, many of the victims that the defendant assaulted, many of the charged victims, they were — Kennedy. Let me just — I hear what you're saying. Was this raised with the judge in camera or in pretrial saying we need to bring this non-charged testimony on because these other people are related or there's claims of intoxication? We need to be able to show the jury by people who are not tied up in this direct case, who are not related, who don't have these other circumstances, that this is his — you know, this shows what he does. This is his intent. I don't — the government definitely, in its pretrial pleadings — I was not trial counsel below. The government, in its pretrial pleadings, definitely brought up to the court the reasoning for why it needed this other act evidence, including being able to defend or to show, prove specific intent, force, and to corroborate the other victims' testimonies. And the other thing that I think is important as to why this — to show specific intent or force as to the specific charged conduct, it might show propensity, but it seems that propensity was already shown by the charged conduct. And I don't understand how talking about some other conduct could show you that in a specific instance of charged conduct there was intent or force. Well, I think it — it's a difficult one, but I think, for instance, for example, with Jane Doe I, for instance, the defendant had taken her out to a remote location and, under the pretense of showing her self-defense and karate, he sexually assaulted her. Well, then you have in this other charged evidence, this other 413 evidence of a previous victim, again, the same thing, the defendant showing her self-defense karate in the same sense. So I guess it shows — it shows, like, there's not an absence of mistake. He knows what he's doing, and he's trying to — But didn't you already have that in all the charged conduct? Those same kind of overlaps existed in the charged conduct. But the thing is, is you needed this in case for some reason the jury doesn't believe these charged victims, because many of the charged victims, after the defendant assaulted them, unbelievably these girls, teenagers, would then become the defendant's girlfriend or have a relationship and start confiding in the defendant, which is what you would not expect for somebody who's just been sexually assaulted by the defendant. But you see many of the victims testify to this. So it's really important to show that you have people who are not related at all showing that, look, the defendant did the same type of thing to me in this instance. And the government has to prove its case. It doesn't know which witnesses the jury is going to believe or does not believe. And so the government needs to set forth all this evidence in trying to meet its burden of proof before the jury. Kagan. If we believe that this was error, is there any way that we could find it harmless? Or are you saying that because these witnesses all had problems, we couldn't find any of it to be harmless, but there was no way that the jury would have necessarily convicted on any of the charged conduct without this other evidence? If the Court were to go down the road, which we don't believe it should, we believe the Court did not abuse its discretion in allowing them this evidence. I do believe it is harmless error, given the testimony that was testified to by the victims and the all the charges against them. I don't think it all of a sudden, without this testimony, the jury would have acquitted the defendant. Are there specific charged acts that you think we could confidently say would have been convictions even without the uncharged conduct? I'm going through – I have to go through each one. But I definitely think that there's – there was sufficient evidence to – or that you could charge without the other act evidence coming in. The jury could have found a – definitely could have found a conviction. But would they definitely have found – could we find that it's harmless error if we believe this was error? I think they could. The Court could definitely find that it was harmless error in this instance. Why didn't you argue that in your brief? I don't know why. I'm thinking – I don't know off the top of my hand why I did not argue that in the brief. That was my mistake. Let me ask you a question, and maybe you can assist me with this. And that is, in these cases, it's so difficult to try, and they all come in, and the district court judge has to wait for somebody to say something to him before he's going to rule, he or she is going to rule. At what point was this issue specifically raised to the district court by the appellant? It was raised pretrial, and it's pretrial motions. And the pretrial motions were specific in these areas and identified the specific witnesses that there's an objection to? Correct. Yes. And, in fact, the government, in its response to the defendant's motion to exclude evidence, made it a combination of its notice to introduce the other evidence, and it did name the victims. And then the defendants filed a second motion to exclude evidence. The government again responded, and then again before trial, the government supplemented its notice, and it laid out who the victims were, who the other Rule 413, 414 evidence victims would be, and what they would testify to. And, in fact, the government did not end up calling all of the witnesses that it did give notice to. So at that point, the judge was fairly acquainted with the objection and the response? Correct. That is correct. And the court made its ruling, and then at trial, the defendant did not renew its objections. It did not make a continuing objection. It then the trial proceeded, and it was before the testimony of the one of the first victims in the case whose assault was barred by the statute of limitations. It was before that witness testified that the defense counsel asked for limiting instruction, which actually benefited the defendant at that point. Okay. So then the issue is whether or not the judge abused his discretion in making the ruling with that in that context. Correct. And the government's position is that the judge did not abuse its discretion. And to answer Judge Friedland, to answer a question, why didn't the government make the harmless error argument, yes, the government should have, but I also believe that the government felt so strongly that the court did not abuse its discretion. Maybe it didn't feel that it was necessary, but it still should have done it, and in any event, it would have been harmless. Getting to your argument that there were proper limiting instructions, as I read the jury instructions on this evidence, they seem entirely inconsistent and incoherent. There are three different instructions, and they all say different things. One says you can only consider the evidence for its bearing on intent, motive, opportunity, preparation, plan, knowledge, and for no other purpose, so propensity isn't on there. The next one says, bearing on any matter which is relevant, including the defendant's disposition to commit the charged offenses, that one says propensity is okay. And then the last one was, may not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial, which seems like that's saying you can't consider it for any relevant purpose at all. I don't understand how these instructions were helpful or how anyone could have understood them. Kagan. During trial, and again at closing, there was a 404B argument or instruction given. And as the prosecutor ---- Which one of those was the four? Which one do you mean by that? Is that the first one I read? Well, the one given during trial, and again, the one that's saying you've heard evidence that the defendant committed other acts not charged here, you may consider this evidence only for its bearing on the question of the defendant's intent, motive, knowledge. And then you may not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial. That's what I'm calling the 404B instruction. And as the prosecutor pointed out in her closing argument, that instruction pertained to testimony regarding the defendant's physical abuse of the victims, like the, not the sexual things, but when he would hit the victim or he would, he broke one of the victim's ribs, or when he would provide the girls alcohol, supply them with alcohol. So that, I believe, the 404B, as the prosecutor pointed out in the closing, was going to that. The same ---- How do we know that? How did the judge explain that that was the evidence that those instructions related to? The judge just gave a 404B, that 404B instruction, but then at the prosecutor in its, in her closing argument, delineated and said that this instruction you can consider as a regards to the defendant's physical, I can get the exact language, what the prosecutor said. Just a moment. Okay. The defendant, and it's at ER 2302, in her closing argument said, she was talking about the instructions. One of them is an other acts instruction, and the judge will tell you that some of the acts that the defendant is not on trial for are to be considered just for limited purpose. Those are things like the defendant physically abusing his victims, things like providing his victims with alcohol. So that was what she was referring to, the 404B. The court did give a proper rule 413 propensity evidence instruction saying, and this is at ER 2394, you have heard evidence that the defendant has committed other acts of sexual abuse in addition to the offenses charged in the third superseding indictment. In deciding if the defendant is guilty of offenses charged in the third superseding indictment, you may consider the evidence of the defendant's commission of these other acts of sexual abuse for their bearing on any matter to which it is relevant, including the defendant's disposition to commit the charged offenses. And that is a proper 413, 414 propensity instruction. And in the egg one said abuse. Is there any reason the jury should have understood that that didn't include sexual abuse? The first one said abuse? It's the first that said the – I'm sorry, I don't understand where the first one said abuse. Well, what you're saying, the prosecutor, sorry, the prosecutor explained the first one by saying you can consider – you heard evidence of other abuse. Oh, physically abusing his – I believe the prosecutor then, again, made it clear in her closing argument. She went through all 23 counts and which evidence related to which victim and what evidence supported each count. And then the prosecutor specifically said, and now you've heard testimony from these other witnesses. What are you to do with that testimony? And that's where she talked about the – gave the – reiterated the Rule 413 instruction. So I believe the prosecutor made it clear in her closing argument between the two. But the judge didn't, though, right? Was there any objection to any of the jury instructions in the 403, 414? There was no objection to it at all. But the thing is, is all of this evidence is allowed in under 413. So the fact that the defendant even got a 404B was in the defendant's favor. The propensity evidence comes in all the time. Right, exactly. It's discarded a little bit and an instruction is given, and there's no objection to the instructions? Correct. There was no objection to the instructions. Any other questions from my colleagues? All right. Then we – the government would ask that you please affirm the convictions and sentences. Counsel, you have a little time left, if you'd like to use it. At some point, the question has come up, did the district court judge make a decision prior to the time that the trial began with respect to the admission of this evidence? And I'm reading from, again, Document 332. The district court's conclusion was there's no indication that these acts are or are not needed. Are or what? Are or are not needed. So what the judge is saying is at this particular point in time, I don't know whether they're needed or not. So our point becomes, then, if that were true, then let the government put its case on and put its case on with the Jane Doe's in order, and then make that decision. But instead, the order of testimony was Jane Doe I, then M.A., Jane Doe IV, then S.C. Did you make an objection to the order of witnesses? No, Your Honor, we did not. So it was never before the district judge? Well, that issue, the actual idea about allowing evidence to come in until the court had an opportunity to hear the trial, that was an argument that was made. No, to Your Honor's question, we did not argue at the point when the trial began. We did not re-argue that. Any other questions? Thank you both for your fine arguments. We appreciate it very much. The case just argued is submitted.
judges: Wallace, Smith, Friedland